Justice Smith's camera, there we go. The 2004 Minnesota Supreme Court decision, Hushel v. Beckingham, held unambiguously that the application of collateral estoppel required for the first of the four elements that the issue be distinctly contested and directly determined. The district court below did not apply that standard, and the appellee in this case argues that's not the correct standard and never argues it can satisfy that standard. If Hushel v. Beckingham's distinctly contested and directly determined is a correct statement of law, this case must be reversed. Instead, appellee and the court below tries to impose a lower standard based on the Minnesota Supreme Court's decision in Mock v. Wells. In Mock v. Wells, the Minnesota Supreme Court used the language actually presented and necessarily determined. This was a fundamentally different type of case because it was a benefits case, and what the Minnesota Supreme Court decided was that the record that went up on appeal to the Minnesota Supreme Court did not contain evidence of whether the employee's medical condition had changed. So when they implanted a new Medtronic neurostimulator, whether or not he could receive benefits from that, despite a previous decision by him, was not an issue that the Minnesota Supreme Court could decide. Mock v. Wells was not a revisiting of the standard under Hushelt. None of the appellate briefs argued that the Hushelt standard should be changed. In fact, the decision in Mock v. Wells cites to Hushelt. If Hushelt v. Beckingham was not overruled, the appellant should win and the case should be reversed. Even if this Court were to decide that somehow Hushelt was narrowed by the decision in Mock v. Wells, the appellee still cannot prevail without two jumps of faith. Keep in mind, the burden is on them to prove the application of the doctrine. So what we have for a final judgment, and it appears at the appendix, page 52, is Hans Olmstead County entering a judgment role in favor of the judgment creditor. Were those cases that you cited, were those default judgment cases? They were not. But both Hushelt and Kaiser, which it cites, goes to this idea that it's a fundamental rule that it has to have been distinctly contested and directly determined. And if it's a default case, it cannot, by definition, be distinctly contested. There's a case directly on point, which is the Herod v. Deaver case. I think you mentioned it, that literally covers default judgments. And then the Court of Appeals, Minnesota Court of Appeals, has basically extended that within the last 30 years. In the context of a consumer debt case with 548.101, which is the Minnesota legislature saying just because you allege it doesn't mean you can get a default judgment, I don't think that's the law in Minnesota based on Hushelt and Kaiser and that statute. I don't think simply saying they pled it, therefore, you can get collateral estoppel for a default judgment is true in this context. The problem is I sat on that Court, and they don't overrule things in an applied fashion. If you have a case that is directly on point, which I think that 1925 case is, you can rely on all the extra language you want, but we have to follow the case that's directly on point. And that's what the Minnesota Supreme Court does. Even if you conclude that a default judgment could be collateral estoppel, this judgment is not. Okay, that's a different argument. What is different about this default judgment that we would see in other default judgments? In this default judgment, you have Hans Hollen, who's a court administrator, not a judge, and he's applying the standard in Minnesota Rule of Civil Procedure 5501, which in the non-consumer context means that all you need to do is prove it was served and there was no answer. In fact, that's literally the language that appears in his order. In order for the issue of ownership, which never appears in his order, to have been distinctly contested and directly determined, you would have to make two jumps of faith. The first is Hans Hollen, the court administrator, applied 548-101. There's no evidence that's true. There's no reference in the judgment to the application of that statute. We contend a clerk, court administrator, could not do that because the statute requires an evaluation of the admissibility of evidence. Although we have final judgments that come out of our court that say on behalf of the court and it's signed by the clerk of court. Why is — and I would assume that's collateral estoppel effect. But this is not on behalf of the court. This is 5501, which says a court administrator can enter it if there's an affidavit from the lawyer that says it was served and no response was done. 548-101 says that does not apply in this area. The other thing that's missing in the second jump you would have to do is if Hans Hollen applied 548-101, that he evaluated the question of ownership. It's not referenced in the judgment. If this was a judicial determination from a judicial officer saying I applied 548-101, I determined ownership, that's a very different case. That's not this case. What's the use of a default judgment, then, if you can't actually — if then another party could just run into court and challenge it and say it was done by a court administrator? In this context, it would have to be done by a judicial officer. And even then, I think it would have to reference for it to have collateral estoppel, the statute and the question of ownership. What issue would ever be distinctly contested and directly determined in a default judgment? In a different context than a consumer case, it could be an issue of — it could be an ownership issue. It would just not be in the consumer context. I think that's why Hochschild says you can't have it in a default judgment. But I can imagine ones where you could say evidence was submitted as part of the default judgment that established that issue because you knew that issue was in dispute. Counsel, what distinguishes the consumer context? I think the consumer context takes this and takes Hans Hollen's judgment out of the area where you can — this court in its de novo review can decide — What about the consumer context does that? 548-101 is the legislature adopting a different rule for default judgments in consumer cases. And when it adopted that statute, we no longer applied the 5501 standard in a default judgment because it's more limited. The last issue, and I'll save my last couple of minutes for rebuttal, is the court below recognized but never performed a fairness analysis. This is not a second attempt plaintiff. This is not a case like most of the collateral estoppel cases where the plaintiff makes an argument, loses, then tries to make another case. Ms. Delgado was the defendant in the first case and had no understanding reasonably that obtaining a default judgment against her was going to forfeit her Federal protection under the FDCPA. That's why fairness dictates that it should not be applied in this case even if you get to the right law and the right facts. The court still has to do that fairness analysis, which the district court recognized but never performed. I'll save my remaining time for rebuttal. Thank you. Very well. Thank you. Good morning, Your Honors. May it please the Court, Counsel Patrick Newman of Bassford-Remley, appearing on behalf of Appali Midland Credit Management. Starting with the application of collateral estoppel to default judgments in Minnesota, Judge Strauss, you are correct. The Herod v. Deaver case is directly on point. Neither Hauschildt nor Mock dealt with a default context. It speaks not at all to the unique position that a default judgment occupies substantively under Minnesota law. We go back further in the briefing from the Deaver case. This extends all the way back to reconstruction-era holdings from the Minnesota Supreme Court, Doyle v. Hallam, Adams v. Adams, Northern Trust Company v. Crystal Lake Cemetery Association, all of which tell us if we pull out the threads from those cases, we learn that a default judgment has the legal consequence of being confessed by the defaulting party as to all material facts alleged in the complaint, and it is treated as though it had actually been litigated and the result is a jury verdict for the plaintiff, the non-defaulting party. So that is unique. That is different than other default questions at different procedural postures. So that answers the Court's question about what is the use of a default judgment. The Minnesota Supreme Court has spoken uniformly on that issue for more than 100 years. It is a different rule, the Appellant's counsel's right, than other jurisdictions, including the Federal common law, but that's just not, we're not talking about that. We're talking about Minnesota today, and that's what matters. In addition, not only are the issues that are expressly pled, like Midland did, by the way, in the state law complaint, specifically in two paragraphs, that they own the account, the date on which they purchased it, and that they are expressly prosecuting the collection claim on the account as a successor in interest to the prior owner. So it was absolutely before the state court in the collection action, but we know further that even predicates that are embraced as sort of necessary threshold questions, those are also issues that are determined by a default judgment. And this occurs in that doctrinal line of Doyle, Adams, and Northern Trust, where, for example, in the Northern Trust, this is probably our best case. So Herod v. Deaver we agree is directly on point. I think we get to affirmance as well through Northern Trust, where we had an initial action for the foreclosure of a mortgage, and there was a default, and so there was pleading in terms of a default and all of the rest on the contract. We get to a second action. It's an assigned claim, by the way. It's a different plaintiff, just like Midland is an assignee in this case, and goes on to move for ejectment. We've got a holdover from the mortgagor, and so we're trying to evict them. And now all of a sudden we have a defense saying, oh, well, we don't have a valid mortgage. You can't assign. It was a cemetery. So you can't assign a mortgage interest in land plotted for burial. And the second court, in applying default judgment in the collateral estoppel context, says, well, no, no, no, time out. You can't talk about the validity of the mortgage now, even though that wasn't expressly pled in the first action. You can't get a foreclosure unless you have a valid mortgage. Let me ask you this. So I want to at least explore it. So when we issue a judgment without an opinion, our clerk normally signs it or electronically signs it, but it says on behalf of the court. In Minnesota, I know that it depends on the judicial district as to how it's done, but there are some judicial districts, and I can't remember whether Olmstead County is one of them, where it's done administratively, where a judge may look at it and say, yeah, that's fine, but doesn't do the kind of analysis that maybe they were doing in 1925. Should we be concerned about that? No, Your Honor, you should not. Just now today, for the first time, I am now perceiving this argument because it was not in this linear fashion outlined in appellant's papers. I can answer that question by a singular statutory citation, is Minnesota 548.101c2, which expressly says that court administration may perform these functions. If the Subsection A predicates, which expressly enumerates establishing ownership by submission of admissible evidence, if that is satisfied along with the other six enumerated predicates, the administrator may enter the judgment. That did not come up in the papers, Your Honor, because, again, this argument was not framed up until just now. So was there admissible evidence that came into the, you know, that was filed along with the complaint in the original action in Olmstead County? Yes, a bill of sale and all of the details regarding Ms. Delgado's account. And that is, I mean, from a practical perspective, there's no more evidence to come in on this if we were to go back to the district court. We'd be looking at the exact record that was before the state court. And that conclusively establishes that Midland does, in fact, own the debt. And it goes, there's been some ink spilled here about the Hauschildt v. Mocked. I think our words were that they were congruent. And I stand before you now arguing that, yes, in fact, not only are Hauschildt and Mocked congruent together, but also with what I would call the Doyle doctrinal line of cases that talk about these fundamental and necessary predicates to entering judgment. And this notion of distinctly contested and directly determined, even if the court were uncomfortable with saying, well, that's either somehow implied or we don't quite get there as a matter of express pleading in the state court complaint, we go further. In the 548.101 context, Minnesota statutory enactment says we have to, in order to get to judgment, we have to establish by admissible evidence to the state court that we own the account. And that happened here. And so it is hard to conceive now what is more directly contested and determined than submission of evidence that is not. We agree that's not required under Minnesota Rule of Civil Procedure 55 in a non-assigned consumer debt context. So we've gone further. And we outlined this in our brief. That also goes to the fairness predicate, whether the equities would weigh against the application of collateral estoppel. Here, Ms. Delgado, in addition to these evidentiary predicates related to ownership, she also needed to receive additional notice that other defaulting parties in the non-assigned consumer debt context don't get under Minnesota law. If we were under Rule 55, that wouldn't happen. But here, Delgado is served with the summons and complaint, again, alleging ownership, and also an express notice that says, by the way, Midland will be seeking entry of a default judgment against you. And so this is notice upon notice giving her multiple opportunities to come in and participate in the litigation if she thinks that's appropriate. Of course, she did not. And so we have a default judgment that precludes the claims. As far as, I guess, on the equity portion of it as well, we noted in our briefing that, you know, if Ms. Delgado felt strongly about this ownership issue, notwithstanding record evidence in the state court establishing that Midland owns the debt, Rule 60 provides the appropriate mechanism to seek relief from that judgment. And she had about four months left on the Rule 60 clock when she commenced the FDCPA case with the benefit of counsel. So certainly, if she had wanted to go back to the Olmstead County Court and say, well, no, no, no, timeout. That's not sufficient. That does not establish ownership. She had that ability and could have done it with counsel and did not avail herself of that opportunity. So under the unique facts of this case, certainly we would stand on our position that the equities do not weigh against the application of the doctrine. I think I've largely said my piece unless the Court would have additional questions for me. Hearing none. Thank you, Your Honors. Thank you, Mr. Newman. Appellant's argument hasn't changed. It's exactly the same argument made to the district court to make to this court. The reference to C-2 in counsel's argument for the first time is not applicable because that's the court entering it in administrative default if the court determines that the evidence established it. Appellee admits in his argument the problem with the old default cases. He says that means that the allegations in the complaint are now deemed to have been determined if it was by a jury. 548-101 is the legislature of Minnesota saying, just because you pleaded, that's not enough in this unique area. The evidence they submitted does not establish ownership in this case. This is a judgment on the pleadings. Discovery continued after, before this motion was heard. We took depositions. They do not own this debt. That's not part of what this court has to determine. But that's what we pled and what we will prove when this case gets reversed and sent back. Why not, so Rule 60 is almost identical in Minnesota that it is under federal rules. Why not go back to the state court and say we have evidence now that shows that the debt is not owned by the company? I can't answer that question without revealing attorney-client communication. But the real answer is, it's not necessary. The violation of the FDCPA happens when they file the action or they serve the action on a debt they don't own. What happens as a result of that, win, lose, draw, settle, dismissal, doesn't matter. The violation happened as soon as they served a complaint on a debt they didn't owe. That's an F-1 violation. So going back under Rule 60 to fix it, particularly when we had Heroux, which was Judge Doty's decision saying collateral estoppel does not apply, the fact you got a default judgment is not a problem in federal district court in Minnesota, there was no perceived need to do that because that was the established law by a judge of this district court applying Hosshult and saying it doesn't apply to a default judgment. Thank you very much. Thank you, Justice Lieber. The Court appreciates both counsel's appearance and argument. Cases submitted will issue an opinion in due course. You may be dismissed.